UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WESLEY J. DIFRANCESCO,

                              Plaintiff,               Case # 18-CV-376-FPG

v.                                                                       DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

**INTRODUCTION**

On January 17, 2014, Plaintiff Wesley J. DiFrancesco protectively applied for Disability Insurance Benefits under Title II of the Social Security Act ("the Act") and Supplemental Security Income Disability under Title XVI of the Act. Tr.[1] 159-77, 249-61. The Social Security Administration ("SSA") denied his claim and DiFrancesco, proceeding with counsel, testified at a hearing before Administrative Law Judge David F. Neumann ("the ALJ"). Tr. 123-57. On July 25, 2016, the ALJ issued an unfavorable decision. Tr. 10-19. After the Appeals Council denied his request for review, DiFrancesco appealed to this Court, making it the final determination of the SSA.[2] Tr. 2-6; ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). EFC Nos. 12, 14. For the reasons that follow, DiFrancesco's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further administrative proceedings.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 6.

[2] The Court has jurisdiction over this action under 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3).

1

## LEGAL STANDARD

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g) and § 1383(c)(3)) (other citation omitted).

The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

## DISCUSSION

In conducting the requisite five-step analysis,[3] the ALJ determined, among other things, that DiFrancesco's diabetes with diabetic foot ulcer, lower extremity neuropathy, diabetic retinopathy, cataract and astigmatism in the left eye, history of seizures, and status post right hip arthroplasty were severe impairments. Tr. 12. The ALJ found that DiFrancesco retained the residual functional capacity ("RFC")[4] to perform sedentary work but DiFrancesco could: lift, carry, push, and pull 5 pounds frequently and 15 pounds occasionally; sit for 7 hours during an 8 hour workday; stand for 1 hour in an 8 hour workday; and occasionally balance, stoop, kneel, crouch, crawl, and climb stairs but should avoid operating a motor vehicle and heights. Tr. 13.

---

[3] The ALJ uses this analysis to determine whether a claimant is disabled and therefore entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920.

[4] A claimant's RFC reflects his ability to perform physical or mental work activities on a sustained basis despite his impairments. 20 C.F.R. §§ 404.1520(e)-(f), 416.920.

Additionally, the ALJ determined that DiFrancesco "must use a cane to assist with ambulation (while the contralateral upper extremity can still be used to lift and carry within the limits specified above)." Tr. 13. Ultimately, the ALJ concluded that there were jobs within the national economy that DiFrancesco could perform, thus rendering DiFrancesco not disabled.

DiFrancesco argues that the ALJ erred by failing to develop the record following his right hip surgery and by incorporating the consultative evaluator's use of a cane into the RFC but failing to include his specification that the cane be used for balance. The Court disagrees with DiFrancesco's position on development of the record but remands because, having credited the consultative evaluator's opinion, the ALJ failed to properly include it in the RFC.

**I.    The Consultative Evaluator's Opinion Was Not Stale**

On March 10, 2014, Hongbiao Liu, M.D. evaluated DiFrancesco and opined, among other things, that he had moderate limitations for walking, bending, and kneeling, and would need to use a cane for balance. Tr. 523-25. DiFrancesco underwent right hip surgery on April 16, 2014. He argues that Dr. Liu's opinions regarding his exertional limitations were rendered stale because his physical functioning declined after his hip surgery. ECF No. 12-1 at 19.

"While the mere passage of time does not necessarily render a medical opinion outdated or stale, subsequent surgeries and treatment notes indicating a claimant's condition has deteriorated may." *Moon v. Comm'r of Soc. Sec.*, No. 17-CV01312-MAT, 2019 WL 2240235, at *6 (W.D.N.Y. May 24, 2019) (citing *Jones v. Colvin*, No. 13-CV-06443, 2014 WL 256593, at *7 (W.D.N.Y. June 6, 2014) (ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition")).

Here, however, the post-surgery medical records do not support a finding that DiFrancesco's condition worsened after surgery. A note from DiFrancesco's orthopedic group in

February 2015 indicates that DiFrancesco's "hip is doing very well for him" and despite "some weakness on stairs" he was "ambulating without any assistive devices." Tr. 590. One record from March 2015—slightly less than a year after the surgery—shows that DiFrancesco "has demonstrated slow improvements with balance and ambulation." Tr. 607. Physical therapy records from July 2015 indicate that DiFrancesco's walking and balance were "improving." Tr. 606. Because there is no evidence that DiFrancesco's condition worsened, there is no basis for concluding that Dr. Liu's opinion was stale and in need of further development.

Therefore, the ALJ did not err by relying on Dr. Liu's opinion.

## II. The RFC Does Not Properly Incorporate Dr. Liu's Opinion about the Cane

The ALJ erred, however, in failing to properly incorporate Dr. Liu's opinion into the RFC, despite purporting to rely on it.

As a general matter, "the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,'" *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quoting *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995)), and there is no "absolute bar to crediting only portions of medical source opinions." *Younes v. Colvin*, No. 14-cv-170, 2015 WL 1524417, *8 (N.D.N.Y. Apr. 2, 2015). Yet, where the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Dioguardi*, 445 F. Supp. 2d at 297 (quoting Soc. Sec. Ruling 96-8p, 1996 WL 374184, *7 (1996)). Accordingly, an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions. *See Younes*, 2015 WL 1524417, at *8 (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an administrative law judge must have a sound reason for weighting portions of the same-source opinions differently"); *Phelps v. Colvin*,

4

No. 12-cv-976, 2014 WL 122189, *4 (W.D.N.Y. Jan. 13, 2014) ("The selective adoption of only the least supportive portions of a medical source's statements is not permissible") (internal quotations and brackets omitted); *Caternolo v. Astrue*, No. 11-cv-6601, 2013 WL 1819264, at *9 (W.D.N.Y. Apr. 29, 2013) ("[I]t is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination.") (internal quotations omitted) (collecting cases); *Searles v. Astrue*, No. 09-cv-6117, 2010 WL 2998676, at *4 (W.D.N.Y. July 27, 2010) ("An ALJ may not credit some of a doctor's findings while ignoring other significant deficits that the doctor identified.").

Here, Dr. Liu opined that "the cane is medically necessary to keep his balance and limit pain." Tr. 523. The ALJ credited Dr. Liu's opinion, finding that it was "consistent with, at most, the restrictions identified in the above residual functional capacity assessment." Tr. 16. The ALJ urged that Dr. Liu's opinion was "well-supported by the documented subjective, objective, clinical, diagnostic, and treatment evidence" and was "not contradicted by any other accepted medical source opinions of record." Tr. 16. Yet despite acknowledging Dr. Liu's opinion about DiFrancesco's need to use a cane for balance, the ALJ failed to incorporate those findings into the RFC and did not explain his decision for failing to do so, as required.

Once medical need for an assistive device has been established, the ALJ must incorporate that device into the RFC. SSR 96-9P, 1996 WL 374185 (1996). For example, in *Feringa v. Comm'r of Soc. Sec.*, the court remanded where a cane was approved by medical providers and the consultative evaluator, but the ALJ's RFC did not reflect the additional limitations someone with a cane may have. No. 15-cv-785, 2016 WL 5417403 (N.D.N.Y. Sept. 9, 2016). The Court explained:

> The ALJ's RFC appears to take into account, in part, the fact that plaintiff uses a cane insofar as he was to avoid climbing scaffolds, ropes, and ladders, and must

5

have a sit/stand option. However, the RFC does not address additional possible limitations that arise for someone who requires the aid of a cane when ambulating, such as how use of a cane in one's dominant hand may impact his ability to complete some of the duties of light work, such as the ability to carry items weighing up to twenty pounds with one hand while using a cane in the other, and whether the need to use a cane in general could result in additional limitations on light work.

*Id.* at *7.

To be sure, the ALJ accounted for DiFrancesco's need to use a cane "to assist with ambulation" but *not*, as Dr. Liu opined, for balance. The ALJ failed to provide any reasons why he credited Dr. Liu's opinion that DiFrancesco would need to use a cane but not that portion of the opinion that specified that the cane would need to be used for balance. Although the Commissioner now attempts to assert that the need for the cane was not fully consistent with the medical records and testimony indicating that DiFrancesco did not use an assistive device, *see* Tr. 148, such an argument is *post hoc* rationalization not included in the ALJ's decision.[5] *Accord Alazawi v. Comm'r of Soc. Sec.*, No. 18-CV-00633, 2019 WL 4183910, at *4 (W.D.N.Y. Sept. 4, 2019) ("This court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." (quoting another source)).

This is not harmless error because, as explained above, DiFrancesco's need to use a cane to balance may interfere with his ability to stand for one hour per workday—as limited by the ALJ—or his ability perform tasks while standing and holding a cane. *See Vanever v. Berryhill*, No. 16-CV-1034, 2018 WL 4266058, at *2 (W.D.N.Y. Sept. 6, 2018) ("This error was not harmless. Once medical need for an assistive device has been established, the ALJ must

---
[5] Although some medical records do show that DiFrancesco was ambulating without an assistive device, the medical evidence is not conclusive in this regard. Indeed, DiFranceso testified that he continued to be "unbalanced," Tr. 148, and he had fallen several times, Tr. 584-85.

6

incorporate that device into the RFC."). The RFC does not contain any explicit, concomitant restrictions on DiFrancesco's ability to balance or limitations in his ability to use the hand not holding the cane while standing.

## CONCLUSION

DiFrancesco's motion for judgment on the pleadings (ECF No. 12) is GRANTED, the Commissioner's motion for judgment on the pleadings (ECF No. 14) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this Decision and Order, pursuant to sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3). The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 29, 2020
      Rochester, New York

                                    HON. FRANK P. GERACI, JR.
                                    Chief Judge
                                    United States District Court